1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BENJAMIN TABAYOYONG CARIDAD,          Case No.   2:21-cv-00704-WBS-JDP (HC)

12                    Petitioner,

13          v.                               FINDINGS AND RECOMMENDATIONS

14    CINDY BLACK,

15                    Respondent.

16

17          Petitioner Benjamin Tabayoyong Caridad seeks a writ of habeas corpus under 28 U.S.C.

18   § 2254.  ECF No. 1.  He argues that: (1) his waiver of a jury trial was involuntary, (2) there was

19   insufficient evidence to support his involuntary commitment, and (3) his trial counsel was

20   ineffective.  *Id*. at 5.  Respondent has answered the petition, ECF No. 22, and petitioner has

21   declined to file a traverse.  For the reasons stated below, I recommend that the petition be denied.

22          **I.      Background**

23          Petitioner's claims stem from a state court decision extending his involuntary commitment

24   to the Department of State Hospitals.  ECF No. 20-8 at 1.  Petitioner was originally committed as

25   a mentally disordered offender in 2006, as a condition of parole.  ECF No. 20-6 at 9.  In 2009,

26   when his parole was set to expire, the district attorney filed a petition for commitment and argued

27   that, based on an outpatient program assessment, he would continue to pose a substantial danger

28   of physical harm to others if he were released unsupervised.  ECF No. 20-8 at 4.  Petitioner was

1

committed and recommitted to Napa State Hospital over much of the next decade.  *Id.*  The recommitment at issue occurred in 2018.  *Id.*

The decision to recommit petitioner in 2018 was based, in large part, on a written assessment of petitioner's mental status provided by Napa State Hospital, the admission of which was stipulated to by petitioner's counsel.  *Id.*  Included in the assessment was a report authored by Dr. Aaron Bartholomew, a forensic psychologist employed by the hospital.  ECF No. 20-6 at 12.  Bartholomew opined that petitioner exhibited schizophrenic symptoms, including auditory hallucinations and paranoid delusions.  *Id.* at 12-13.  Although Bartholomew noted that petitioner was improving in some respects, he ultimately concluded that the petitioner's symptoms of mental illness were not in remission.  ECF No. 20-8 at 5.  Also included in the assessment was a letter from Dr. Patricia Tyler, the hospital medical director, stating that petitioner continued to pose a substantial danger of physical harm to others.  ECF No. 20-6 at 21.

The trial court, after weighing the assessment, concluded that, beyond any reasonable doubt, petitioner had a severe mental disorder that was not in remission.  ECF No. 20-8 at 6.  After finding that the disorder made petitioner a substantial risk of danger to others, the trial court extended petitioner's commitment by a year.  *Id.*

It is relevant to the claims at bar that, before his recommitment hearing, petitioner moved to discharge Kenneth Rosenfeld, his appointed counsel.  ECF No. 20-8 at 8.  He claimed that Rosenfeld had been abusive, had engaged in bullying, and that, from 2013 to 2016, Rosenfeld's representation had effectively amounted to "abandonment."  *Id.* at 8-9.  Petitioner also noted that he had filed a federal habeas petition alleging that his counsel had rendered ineffective assistance in previous litigation and, in so doing, created a conflict of interest between himself and Rosenfeld.  *Id.* at 9, 15.  The trial court held a *Marsden*[1] hearing and determined that petitioner's claims about his counsel's performance were internally contradictory, that Rosenfeld had been

[1] In *People v. Marsden*, 2 Cal. 3d 118, 84 Cal. Rptr. 156, 465 P.2d 44 (1970), the California Supreme Court "held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting substitute counsel the opportunity to present his reasons for the request, i.e., evidence and argument to establish that he is receiving ineffective assistance of counsel."  *Robinson v. Kramer*, 588 F.3d 1212, 1215 n.2 (9th Cir. 2009).

1  communicative with him, and that the level of representation had been constitutionally adequate.

2  *Id.* at 13.  The court declined to discharge Rosenfeld.

3  **II.      Discussion**

4        A federal court may grant habeas relief when a petitioner shows that his custody violates

5  federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

6  (2000).  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty

7  Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition.  *See Harrington v. Richter*,

8  562 U.S. 86, 97 (2011).  To decide a § 2254 petition, a federal court examines the decision of the

9  last state court that issued a reasoned opinion on petitioner's habeas claims.  *See Wilson v. Sellers*,

10  138 S. Ct. 1188, 1192 (2018); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because,

11  here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on

12  the merits of this claim, we look to the trial court's decision."); *McCormick v. Adams*, 621 F.3d

13  970, 975-76 (9th Cir. 2010) (reviewing the decision of the court of appeal, which was last

14  reasoned decision of a state court); *Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir. 2003) ("Because

15  the California Supreme Court denied review of Gill's habeas petition without comment, we look

16  through the unexplained California Supreme Court decision to the last reasoned decision . . . as

17  the basis for the state court's judgment.") (internal quotations omitted).

18        Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been

19  "adjudicated on the merits in state court proceedings" only if the state court's adjudication

20  resulted in a decision either (1) "contrary to, or [that] involved an unreasonable application of,

21  clearly established Federal law, as determined by the Supreme Court of the United States," or (2)

22  "based on an unreasonable determination of the facts in light of the evidence presented in the

23  State court proceeding."  28 U.S.C. § 2254(d).

24

25

26

27

28

3

1

        **A.      Waiver of Jury Trial**

2               Petitioner claims that the trial court violated his due process rights when it found that he

3      had voluntarily waived his right to a jury trial without inquiring into the possibility that he was

4      coerced.  ECF No. 1 at 5.  The state appellate court denied this claim in a reasoned decision,

5      stating:

6                      Defendant further asserts the manner in which the trial court found
                       he voluntarily waived his right to jury trial amounts to a violation of
7                      due process.  We are not persuaded.

8                      Following denial of defendant's *Marsden* motion, the trial court
                       gave defendant and Rosenfeld an opportunity to discuss "the issue
9                      of a jury trial or waiving a jury trial."  After a brief recess for that
                       purpose, Rosenfeld informed the trial court defendant wished to
10                     waive his right to jury trial, adding: "That being said, [he] told me
                       that five minutes ago, and he changes his mind rather quickly, so I
11                     would ask the Court to inquire."

12                     The trial court then informed defendant he was entitled to a jury
                       trial unless he personally waived that right.  The trial court also
13                     explained that an attorney can waive the right over a defendant's
                       objection "if the Court finds substantial evidence that the defendant
14                     lacks the capacity to make a knowing and voluntary waiver," but
                       indicated: ". . . I don't find that you lack the capacity to make a
15                     knowing and voluntary waiver.  I find that you do have the capacity
                       to do that, so I'm saying this so I want you to understand it.  It is
16                     your decision whether to have a jury trial or not.  If you want to
                       have one, we'll have a jury trial.  [¶]  I won't permit . . . Rosenfeld,
17                     I don't know that he would want to anyway, but I won't permit . . .
                       Rosenfeld to waive jury over your objection, but I want to be sure
18                     that if we do waive jury that's what you want to do.  Now, . . .
                       Rosenfeld had talked to you about the reasons why a case like this
19                     might be better tried before a judge than a jury.  That may or may
                       not be the case, but I do want you to, having considered
20                     Rosenfeld's counsel, be sure you are making your own personal
                       decision about whether to waive jury or not waive jury."
21
                       After defendant indicated he understood what the trial court had
22                     told him, the trial court asked: "So what would you like to do on
                       this?"  Defendant answered: "I'll waive."  The trial court reiterated:
23                     "Let me just make it very clear that you have the right to have a
                       jury decide this.  They would have to be unanimous.  The People
24                     would have the burden of proving their case beyond a reasonable
                       doubt to the satisfaction of all 12 jurors in order to achieve this
25                     extension that the People are seeking."  Asked whether he
                       understood, defendant answered: "Yes, I do, your Honor."  "And
26                     with that in mind," the trial court continued, "do you waive—do
                       you understand your right to have a jury trial, do you waive your
27                     right to a jury trial in this matter?"  Defendant answered: "I do,
                       your Honor."
28

                                        4

Based on the foregoing, the trial court found "a knowing, intelligent and voluntary waiver" of defendant's right to jury trial.

Section 2972 gives an MDO "the right to a jury trial." (§ 2972, subd. (a)(1).)  Because this provision "gives the defendant, not counsel, primary control" over whether or not to waive this right, "a court must obtain a personal waiver of the defendant's right to a jury trial before holding a bench trial" unless "the trial court finds substantial evidence that [the] defendant lacks the capacity to make a knowing and voluntary waiver," in which case "control of the decision shifts to defense counsel." (*People v. Blackburn* (2015) 61 Cal. 4th 1113, 1125.)

"[A] defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ' " 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,' " ' as well as voluntary ' " 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " ' [Citations.]" (*People v. Collins* (2001) 26 Cal. 4th 297, 305.)

Here, the trial court determined defendant possessed the capacity to make a knowing and voluntary waiver, apprised defendant of the nature of the right he was giving up and the consequences of doing so, informed defendant the decision to waive a jury trial belonged solely to him, and further advised defendant: "I want to be sure that if we do waive jury that's what you want to do."  Defendant stated he understood these admonishments and thereafter waived his right to jury trial.  Nothing more was required of the trial court.

Defendant's right to due process was not violated by the manner in which the trial court found he voluntarily waived his right to jury trial.

ECF No. 20-8 at 16-18.  The California Supreme Court summarily denied the subsequent petition for review that raised this claim.  ECF No. 20-9.

The U.S. Supreme Court has held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  In determining whether a waiver was voluntary, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  In contrast, self-serving allegations that a waiver was not voluntary, made after conviction, should be rejected.  *See Perez v. Rosario*, 459 F.3d 943, 947 n.2 (9th Cir. 2006).

Here, the trial court determined that plaintiff had the capacity to decide whether to waive

5

his right to a jury trial and informed him that the decision was his to make.  ECF No. 20-2 at 9-11.  Indeed, even after petitioner expressed a desire to waive a jury trial, the trial court confirmed petitioner's understanding by asking him if he understood that a jury decision would have to be unanimous and that the prosecution bore the burden of proving its case beyond a reasonable doubt.  *Id.* at 11-12.  Petitioner stated that he understood this and still desired to waive his right to a jury trial.  *Id.* at 12.  The state court's determination of factual issues, like whether petitioner had the mental capacity to waive his constitutional rights, are presumed to be correct and may be rebutted only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Here, petitioner has not presented any convincing evidence that he was incapable of making this waiver or that it was involuntary.  Moreover, the state court's determination that the trial court did all that was required of it under state law in obtaining the waiver is binding on this court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

### B.      Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance by "failing to make objections, cross examine, or provide effective argument against the extension of [petitioner's] involuntary commitment . . . ."  ECF No. 1 at 5.  Additionally, he alleges that his counsel acted under a conflict of interest.  *Id.*  The state appellate court denied this claim:

> Finally, defendant claims he received ineffective assistance of counsel.  This claim is largely premised on the purported irreconcilable conflict of interest addressed above.  For reasons already expressed, we do not accept the premise defendant's filing of a federal habeas corpus petition resulted in an irreconcilable conflict.  However, this conclusion does not entirely dispose of defendant's ineffective assistance of counsel claim.  Defendant also argues Rosenfeld provided constitutionally deficient assistance by stipulating to the admission of Napa State Hospital's assessment of defendant's mental condition in lieu of testimony and by failing to effectively argue against recommitment.  We reject these arguments as well.
>
> A criminal defendant has the right to the assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution.  (*People v. Ledesma* (1987) 43 Cal. 3d 171, 215.)  This right "entitles the defendant not to some bare assistance but rather to effective assistance.  [Citations.]  Specifically, it entitles him [or her] to 'the reasonably competent assistance of an attorney acting as his [or her] diligent conscientious advocate.'  [Citations.]"  (*Ibid.*)  The burden

of proving a claim of ineffective assistance of counsel is squarely upon the defendant.  (*People v. Camden* (1976) 16 Cal.3d 808, 816.)  " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient"

because his [or her] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.]  Second, he [or she] must also show prejudice flowing from counsel's performance or lack thereof.  [Citation.]

Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*In re Harris* (1993) 5 Cal. 4th 813, 832-833; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

We begin with the first element of this claim, deficient performance.  "Generally, failure to object [to the admission of evidence] is a matter of trial tactics as to which we will not exercise judicial hindsight. [Citation.]  'When a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation.  If the record sheds no light on why counsel acted or failed to act in the manner challenged, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" [citation], the contention must be rejected.'  [Citation.]  A reviewing court will not second-guess trial counsel's reasonable tactical decisions.  [Citation.]" (*People v. Kelly* (1992) 1 Cal. 4th 495, 520.)

Here, Rosenfeld did more than fail to object to the admission of Napa State Hospital's assessment of defendant's mental condition; he affirmatively stipulated to its admission in lieu of testimony. This suggests a tactical decision was made, rather than a negligent omission.  Nevertheless, defendant argues had counsel not so stipulated, he could have objected to hearsay in Dr. Bartholomew's report and cross-examined the doctor in order to "emphasize the favorable aspects of the report and bring out the lack of evidence of dangerousness."  Perhaps.  But the report itself was favorable to defendant on the question of dangerousness.  Although it, in conjunction with Dr. Tyler's affidavit, contains substantial evidence of current dangerousness, as defendant himself points out in his briefing on appeal, the report itself does not provide a conclusion on the subject.  Rosenfeld may well have determined no opinion from Dr. Bartholomew on the question of dangerousness was better than having the doctor testify and run the risk of him opining on the witness stand that defendant did indeed continue to represent a substantial danger of physical harm to others.  We decline to second-guess Rosenfeld's decision in this regard.

Finally, defendant argues Rosenfeld "entirely failed to argue that the prosecution had not met its burden of proof beyond a reasonable doubt" with respect to defendant's continuing dangerousness.  Not so.  In arguing defendant did not represent a danger of physical

harm to others, Rosenfeld first noted Dr. Bartholomew's report indicated defendant had not been observed experiencing auditory or visual hallucinations in his current unit despite initially being unmedicated.  Rosenfeld also highlighted defendant's

statement to Dr. Bartholomew that he would seek treatment if he began experiencing psychiatric symptoms.  Rosenfeld argued, "he's nonviolent in that he would use peer groups—I'm paraphrasing to some extent—and work with his social workers.  [¶]  I think that shows tremendous insight, and I think that by reading this report in comparison with prior reports on behalf of [defendant] it does show that he is making gains without question."

At this point, Rosenfeld argued: "There is no way that [defendant] is going to get cured.  It just doesn't happen.  It's not medically possible, but he does have insight.  He is doing better.  He is not responding to stimuli.  He is making appropriate gains.  I'm just not sure how much more he can do in the hospital, your Honor.  I think he should be given an opportunity to be in either at a minimum in CONREP or in a maximum released.  I don't think the hospital is going to be able to do anything more for him in this controlled setting."  Rosenfeld also noted defendant had "support in the community" and argued, "he should be given an opportunity."

Defendant complains that Rosenfeld argued adversely to his interests, and did so based on no evidence in the record, by arguing his mental illness was incurable.  While we certainly understand defendant's concern, the overall theme of Rosenfeld's argument was that defendant made significant progress in his recovery, showed equally significant insight into his mental health issues, and possessed the tools to prevent a potential relapse of symptoms from becoming dangerous.  We read the objectionable portions of the argument as being harmless surplusage of the "let me level with you" variety.

We also view as surplusage comments Rosenfeld made in rebuttal concerning defendant's federal habeas petition.  After calling that litigation "frivolous" and blaming defendant's habeas counsel for being "the impetus . . . or catalyst for that," Rosenfeld argued: "But be that as it may, it is still my opinion that he has done well enough to be able to have the opportunity to be in the community, at a minimum supervised by CONREP, that he deserves an opportunity to succeed and make gains.  He can make gains through CONREP, so I will submit on that."

Defendant argues: "The question in this case was not whether [he] deserves to be released for trying hard in the hospital program.  The only question was whether he was presently dangerous to others and whether his mental disorder was presently causing him to be unable to control dangerous behavior.  Counsel failed to argue the elements the prosecution was required to prove, but had not proven."  For reasons expressed earlier in this opinion, we disagree with the claim the People did not prove dangerousness.  The reason for our conclusion in that regard was defendant's lack of insight and minimization of his psychiatric condition presented a substantial

8

1           danger he would stop taking his medication if released, leading to a
        likely increase in the severity of symptoms and a concomitant
2           increase in the likelihood of the same sort of dangerous behavior
        that led to defendant's initial incarceration.  Rosenfeld argued
3           against such a conclusion by pointing out the aspects of Dr.
        Bartholomew's report that supported an increase in defendant's
4           insight into his mental health condition and also pointing out
        defendant had access to treatment options and support groups upon
5           his release.

6           We conclude neither Rosenfeld's stipulation to the admission of Dr.
        Bartholomew's report in lieu of witness testimony nor his argument
7           to the trial court regarding the element of current dangerousness
        amounted to constitutionally deficient performance.

8

9   ECF No. 20-8 at 18-22.  As noted above, the California Supreme Court summarily denied the

10  subsequent petition for review.  ECF No. 20-9.

11       "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth

12  Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the

13  'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v.*

14  *Washington*, 466 U.S. 668, 685 (1984) (quoting *Adams v. United States ex rel. McCann*, 317 U.S.

15  269, 275 (1942)).  Petitioner bears the burden of proving ineffective assistance of counsel.

16  *People v. Mattson*, 50 Cal. 3d 826, 876-77 (2000).  He must establish two components to succeed

17  on a claim of ineffective assistance of counsel: (1) unreasonably deficient performance, meaning

18  that trial counsel's performance "fell below an objective standard of reasonableness;" and

19  (2) prejudice, meaning that "there is a reasonable probability that, but for counsel's

20  unprofessional errors, the result of the proceeding would have been different." *Strickland* at 688.

21  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the

22  adversarial balance between defense and prosecution that the trial was rendered unfair and the

23  verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

24       The appellate court's rejection of petitioner's ineffective assistance claim was reasonable.

25  It may be that petitioner disagreed with the tactics his counsel chose to pursue, but that cannot

26  form the basis of an ineffective assistance claim.  *See Guam v. Santos*, 741 F.2d 1167, 1169 (9th

27  Cir. 1983) ("A tactical decision by counsel with which the defendant disagrees cannot form the

28  basis of a claim of ineffective assistance of counsel."); *Mancuso v. Olivarez*, 292 F.3d 939, 954

1    (9th Cir. 2002) ("We will not second-guess such decisions or use hindsight to reconstruct the

2    circumstances of counsel's challenged conduct.").  And it must be re-emphasized that it is

3    petitioner's burden to show that his counsel was constitutionally ineffective.  His petition does not

4    offer any substantive argument as to how his counsel's conduct was deficient, and he does not

5    offer any evidence or argument demonstrating that his counsel had a conflict of interest.  This

6    claim should be denied.

7          **C.**      **Insufficient Evidence**

8          Finally, petitioner argues that there was insufficient evidence to support his commitment.

9    ECF No. 1 at 5.  The state appellate court also denied this claim:

10         Defendant contends the evidence is insufficient to support the trial
11         court's finding he continues to represent a substantial danger of
           physical harm to others.  He is mistaken.

12         "A recommitment under the . . . MDO . . . law requires proof
13         beyond a reasonable doubt that (1) the patient has a severe mental
           disorder; (2) the disorder 'is not in remission or cannot be kept in
14         remission without treatment'; and (3) by reason of that disorder, the
           patient represents a substantial danger of physical harm to others.
15         (. . .§ 2970.)" (*People v. Burroughs* (2005) 131 Cal. App. 4th 1401,
           1404, fn. omitted.)

16         In reviewing the sufficiency of the evidence in an MDO
17         proceeding, we must determine "whether, on the whole record, a
           rational trier of fact could have found that defendant is an MDO
18         beyond a reasonable doubt, considering all the evidence in the light
           which is most favorable to the People, and drawing all inferences
19         the trier could reasonably have made to support the finding."
           (*People v. Clark* (2000) 82 Cal. App. 4th 1072, 1082.)

20         Defendant does not challenge the sufficiency of the evidence to
21         support the trial court's conclusion with respect to the first two
           criteria for extending his commitment.  We therefore address only
22         the third criter[ion], i.e., whether he continued to represent a
           substantial danger of physical harm to others.  Substantial evidence
23         supports the trial court's conclusion he posed such a danger.

24         Although Dr. Bartholomew's report noted defendant "has shown an
           increase in insight over the past three to six months," he
25         nevertheless minimized the extent of his mental health history,
           acknowledging only five hospitalizations when the actual number
26         was twice that, and also denying a history of auditory or visual
           hallucinations.  It is undisputed defendant's psychiatric condition
27         contributed to his prior offense, setting fire to a motel room, and
           that he was not taking his antipsychotic medication when he did so.
28         While defendant's present symptoms appear to be significantly less
           than they have been in the past, he still has symptoms, "such as flat

affect and . . . mildly disorganized and paranoid" thoughts, despite regularly taking antipsychotic medication in a controlled environment.  A rational trier of fact could have concluded defendant's minimization of his mental health problems, and his attribution of "[many] of his problems to his history of substance use," as opposed to his psychiatric condition, presented a substantial danger defendant would again stop taking his medication if released, leading to a likely increase in the severity of his psychiatric symptoms and a concomitant increase in the likelihood of the same sort of dangerous behavior that led to his initial incarceration.

Nevertheless, in support of his argument the dangerousness finding was unsupported by substantial evidence, defendant cites various positive aspects of Dr. Bartholomew's report, specifically, during the previous year, defendant "showed no signs of hallucinations or psychosis," he "had no incidents of verbal or physical aggression or property destruction, and engaged appropriately with peers and staff," and "he took his psychiatric medication willingly and independently and had a relapse prevention plan as well as plans to utilize resources provided by CONREP and to get further education."  We acknowledge these facts are favorable to defendant's position.  However, it is not our task to reweigh the evidence and determine the question of dangerousness ourselves. (*See, e.g.*, *People v. Williams* (2015) 242 Cal. App. 4th 861, 874 ["defendant wrongly asks us to reweigh the evidence"].)  Our role as an appellate court is simply to determine whether or not the trial court's determination was supported by substantial evidence.  We conclude it was.

ECF No. 20-8 at 6-8.  As with the other claims, the California Supreme Court issued a summary

denial of the petition for review.  ECF No. 20-9.

Under the Fourteenth Amendment's Due Process Clause, no person can suffer a criminal

conviction "except upon sufficient proof—defined as evidence necessary to convince a trier of

fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v.*

*Virginia*, 443 U.S. 307, 316 (1979).[2]  A habeas petitioner challenging the sufficiency of evidence

under *Jackson* must overcome "two layers of judicial deference."  *See Coleman v. Johnson*, 566

U.S. 650, 651 (2012).  On direct appeal, the appellate court decides "whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found

---

[2] To support an involuntary commitment, federal law requires only clear and convincing evidence.  *See Addington v. Texas*, 441 U.S. 418, 432-33 (1979).  As the appellate court noted, however, California law requires proof beyond a reasonable doubt that: (1) the patient has a mental disorder; (2) that the remission is not in disorder or cannot be kept in disorder without treatment; and (3) by reason of the disorder the patient is a danger to others.  ECF No. 20-8 at 6-7.  Thus, I will evaluate the sufficiency of the evidence claim under the more demanding standard.

1  the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  On

2  habeas review, AEDPA's deferential standard applies, and a federal court may "overturn a state

3  court decision rejecting a sufficiency of the evidence challenge . . . only if the state court decision

4  was 'objectively unreasonable'" under AEDPA.  *Coleman*, 566 U.S. at 651 (quoting *Cavazos v.*

5  *Smith*, 565 U.S. 1, 2 (2011)).  The "only question under *Jackson*" is whether the jury's finding

6  was "so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.[3]  It "is the

7  responsibility of the jury—not the court—to decide what conclusions should be drawn from

8  evidence admitted at trial." *Cavazos*, 565 U.S. at 4.

9         Here, I cannot find that the state court's decision on this issue was objectively

10  unreasonable.  The state court's emphasis of petitioner's minimization of his health problems and

11  attribution of his problems to substance abuse, rather than to mental health, both find support in

12  the record.  *See* ECF No. 20-3 at 103 (noting that "Mr. Caridad loosely acknowledges he has a

13  mental illness, however continues to have challenges seeing his behavior as resulting from

14  psychosis, or distorted perceptions[; h]e attributes much of his problems to his history of

15  substance abuse").  Reviewing this evidence in the light most favorable to the prosecution, there

16  is no basis for overturning the state court's decision.

17         Accordingly, it is RECOMMENDED that the amended petition, ECF No. 9, be DENIED.

18         These findings and recommendations are submitted to the U.S. District Court judge

19  presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of

20  Practice for the United States District Court, Eastern District of California.  Within 30 days of the

21  service of the findings and recommendations, petitioner may file written objections to the

22  findings and recommendations with the court and serve a copy on all parties.  That document

23  must be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

24  district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

25  The parties' failure to file objections within the specified time may result in the waiver of rights

26  on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

27

28         [3] The *Jackson* standard applies in bench trials.  *United States v. Temkin*, 797 F.3d 682, 688 (9th Cir. 2015).

12

IT IS SO ORDERED.

Dated:   May 8, 2023

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE